UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA



BRADLEY S. WATERMAN, )
)
    Plaintiff, )
)
v. ) Civil Case No. 16-1823 (RJL)
)
INTERNAL REVENUE )
SERVICE, )
)
    Defendant. )

MEMORANDUM OPINION
(January 24, 2018) [Dkts. ## 18, 24]

Licensed tax attorney Bradley S. Waterman ("plaintiff" or "Waterman") brings this Freedom of Information Act ("FOIA") suit against the Internal Revenue Service ("defendant" or "IRS"). As relevant here, Waterman's complaint alleges that the IRS improperly withheld information responsive to his FOIA request for all agency information related to an Office of Professional Responsibly investigation into Waterman's alleged misconduct. *See generally* Compl. [Dkt. # 1].

Pursuant to a joint stipulation filed by the parties, Count I of the complaint has been dismissed. *See* Fed. R. Civ. P. 41(a)(1)(A)(ii); Joint Stipulation of Dismissal of Count I with Prejudice [Dkt. # 23]. That dismissal leaves only the parties' cross-motions for summary judgment on Count II pending before this Court. *See* Def.'s Mot. Dismiss & Mot. Summ. J. ("Def.'s Mot.") [Dkt. # 18]; Pl.'s Cross-Mot. Summ. J. ("Pl.'s Cross-Mot.") [Dkt. # 24]. Upon consideration of the pleadings, the entire record, and the relevant case law, the Court concludes that the IRS's decision to withhold the information at issue was

lawful under FOIA. Therefore, the IRS's motion for summary judgment on Count II is GRANTED and plaintiff's cross-motion for summary judgment on Count II is DENIED.

## BACKGROUND

The parties agree on the basic facts giving rise to this action. Waterman is a licensed attorney who represents clients in disputes with the IRS. Declaration of Pl. Bradley S. Waterman ("Waterman Decl.") ¶¶ 1, 6 [Dkt. # 24-2]. In one such matter, Waterman represented the New Hampshire Health and Education Facilities Authority ("the Authority") in anticipation of proceedings before the IRS's Tax-Exempt Bond office ("TEB"). According to Waterman, he assisted the Authority in resolving a dispute with TEB over the tax-exempt status of bonds that the Authority had issued.

Apparently, the IRS suspected foul play in Waterman's representation of the Authority. In March 2014, the TEB filed a Report of Suspected Practitioner Misconduct ("Report") against Waterman with the IRS's Office of Professional Responsibility ("OPR"). OPR is the IRS entity "responsible for investigating and acting on reports (also commonly known within OPR as 'referrals') of suspected practitioner misconduct by individuals who practice before the IRS." Decl. of Keith C. Ott ("Ott Decl.") ¶ 3 [Dkt. # 18-3]. Pursuant to that responsibility, OPR opened a case file on Waterman and individuals within OPR examined the referral. *Id.* ¶ 6. After investigation, OPR ultimately determined that the allegations against Waterman did not warrant further inquiries or action. *Id.* ¶¶ 7-8. In September 2014, OPR informed Waterman of the Report, its conclusion not to take any additional disciplinary action, and of Waterman's duty to abide by IRS rules and regulations in the future. *See* Pl.'s Cross-Mot. Ex. A. [Dkt. # 24-1]. It

also informed Waterman that OPR would retain the file containing the misconduct referral for twenty-five years and reserved the right to reference the file in any future OPR investigations or proceedings. *Id.*

After seeking and failing to obtain all of the information related to the March 2014 Report through informal communications with the IRS, Waterman submitted the FOIA request at issue in this suit. *See* Def.'s Mot. Ex. A [Dkt. # 18-7]. In that January 2016 FOIA request, Waterman sought the Report as well as "all documents prepared in connection with or otherwise relating to the Report," including all "correspondence, memoranda, notes, reports, and other documents" prepared by IRS personnel responsible for investigating and reviewing the Report. *Id.* at 2. Waterman's request identified OPR Attorney-Advisor Keith Ott as the point of contact for locating responsive documents. *Id.*

As detailed in her declaration, IRS "Government Information Specialist" Barbara D. Herring began processing Waterman's FOIA request shortly after it was received. Decl. of Barbara D. Herring ("Herring Decl.") ¶ 4 [Dkt. # 18-2]. Because plaintiff does not challenge the adequacy of the IRS's search, I need not detail the ins-and-outs of that search here. Suffice it to say, however, that following a search in which the IRS checked and then double-checked its files for all relevant documents, the agency identified fifty-four pages of records that were responsive to Waterman's request, segregated and produced the non-exempt records and portions of records, and withheld the records determined to be exempt from FOIA's disclosure requirements. *See* Decl. of Elizabeth Rawlins ("Rawlins Decl.") ¶¶ 8-14 [Dkt. # 18-4].

As in most FOIA cases, the dispute here stems from what the IRS chose *not* to produce. As detailed in the agency's *Vaughn* index, *see* Def.'s Mot. Attach. 5 ("*Vaughn* Index") [Dkt. # 18-5], and declarations of agency personnel, *see generally, e.g.*, Rawlins Decl., the IRS withheld the following information from Waterman. First, citing FOIA Exemptions 6 and 7(c), the IRS redacted the telephone number and e-mail addresses of IRS employees from a set of one-page e-mails between IRS employees. Rawlins Decl. ¶¶ 23-24. Second, and more significantly, the IRS withheld documents and memoranda related to Waterman's representation of the Authority before the TEB, the OPR's investigation of that representation, and agency employees' evaluations of whether to pursue disciplinary action against Waterman. *See id.* ¶¶ 16-21. According to the IRS, its decision to withhold that information was proper under two separate FOIA exemptions: (1) FOIA Exemption 3, which the IRS asserts in conjunction with a federal statute prohibiting disclosure of third-party tax return information; and (2) FOIA Exemption 5. *Id.* ¶¶ 16, 18.

Not surprisingly, plaintiff disagrees with the IRS's decision to withhold the responsive information under the various FOIA exemptions. He sued in this Court to challenge the agency's decision, arguing that the IRS's choice to withhold the requested documents and information contravenes his FOIA rights. Currently pending before the Court are the parties' cross-motions for summary judgment on Waterman's FOIA claim.

## STANDARD OF REVIEW

Both parties have moved for summary judgment on Count II of the complaint. Summary judgment may be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

4

Civ. P. 56(a). FOIA cases such as this one are routinely decided on motions for summary judgment. *See Brayton v. Office of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011).

"FOIA requires executive branch agencies to make their records available 'to any person' upon request, 5 U.S.C. § 552(a)(3)(A), subject to nine exemptions, *id.* § 552(b)(1)-(9)." *Newport Aeronautical Sales v. Dep't of Air Force*, 684 F.3d 160, 162 (D.C. Cir. 2012). To prevail on summary judgment in a FOIA case, an agency must show that it adequately searched for records responsive to the relevant request and that any records withheld by the agency fall within one of FOIA's statutory exemptions. *See id.*; *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983).

Waterman has not challenged the adequacy of the IRS's search for records. *See* Pl.'s Cross-Mot. 5 ("Defendant performed an adequate search for all documents responsive to Mr. Waterman's request."). Therefore, the only question in this case is whether the IRS has demonstrated that any responsive documents withheld by the agency fall within the asserted FOIA exemptions. In such a dispute, a court may grant summary judgment to an agency if, upon de novo review of the agency's decision to withhold responsive records, the court concludes that "the agency has sustained its burden of demonstrating" that the requested documents are "exempt from disclosure under the FOIA." *Newport Aeronautical Sales*, 684 F.3d at 164. A reviewing court may render that decision based solely on information provided in an agency's affidavits or declarations when those materials "describe[] the justifications for withholding the information with specific detail, demonstrate[] that the information withheld logically falls within the claimed exemption, and [are] not contradicted by contrary evidence in the record or by evidence of the agency's

bad faith." *Am. Civil Liberties Union v. U.S. Dep't of Defense*, 628 F.3d 612, 619 (D.C. Cir. 2011) (internal quotation marks omitted).

## ANALYSIS

In response to Waterman's FOIA request, the IRS withheld two categories of information and relied on two different sets of FOIA exemptions. I address each in turn, ultimately concluding that all of the IRS's withholdings were permissible under FOIA.

### A. Contact Information of IRS Employees

The first category of information the IRS withheld was the phone numbers and e-mail addresses of certain IRS employees. Citing FOIA Exemptions 6 and 7, the IRS contends that its redaction of the employees' contact information properly balanced the employees' privacy interests against the minimal public need for disclosure. I agree.

FOIA Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). "The Supreme Court has read Exemption 6 broadly," interpreting "similar files" to include "bits of personal information, such as names and addresses, the release of which would create a palpable threat to privacy." *Judicial Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 152-53 (D.C. Cir. 2006) (internal quotation marks omitted). If disclosure of personnel information would threaten a substantial privacy interest by, for example, opening up employees to "embarrassment and harassment in the conduct of their official duties," *Cleveland v. United States*, 128 F. Supp. 3d 284, 300 (D.D.C. 2015), then a reviewing court must balance the "privacy interests involved" against the "public

interest" in "open[ing] agency action to the light of public scrutiny," *Judicial Watch, Inc.*, 449 F.3d at 153. Here, that balance clearly weighs in favor of the employees' privacy.

To start, the work telephone and e-mail addresses of particular agency employees constitute information that "can be identified as applying" to individuals. *Prison Legal News v. Samuels*, 787 F.3d 1142, 1147 (D.C. Cir. 2015). Contrary to plaintiff's assertions, moreover, the IRS did not withhold entire documents because they contained telephone numbers and e-mail addresses. Instead, the IRS redacted that information—an action even plaintiff characterizes as "appropriate." *See* Pl.'s Cross-Mot. 10. To justify those redactions, the IRS explained that public disclosure of individual employees' work telephone numbers and e-mail addresses would constitute an "unwarranted invasion" of those employees' "personal privacy." Rawlins Decl. ¶¶ 23-24. On the other side of the ledger, the agency noted that redaction was appropriate because the contact information's "utility to the public is of little to no value." *Id.* ¶ 23.[1]

The IRS's analysis was reasonable. The contact information for individual employees sheds little "light on an agency's performance of its statutory duties," *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989), yet exposes individual employees to threatening or harassing contacts from the public. Therefore, as other courts examining Exemption 6 withholdings of employee contact information have similarly held, I conclude that the IRS's redaction of contact information

---

[1] That is especially true here, given that Mr. Waterman apparently "already has" the contact information at issue. Pl.'s Cross-Mot. 10.

was proper under Exemption 6. *See, e.g., Judicial Watch, Inc.*, 449 F.3d at 153 (names and addresses); *Cleveland*, 128 F. Supp. 3d at 300 (mobile phone number).[2]

## B. Investigatory Materials and Memoranda Generated by Agency Personnel

The IRS withheld a second set of documents and information. Specifically, the IRS declined to produce: 1) two memoranda, dated September 2013 and December 2013, that summarize certain facts that employees of the TEB function believed warranted Waterman's referral to OPR; 2) a copy of an August 26, 2014 memorandum prepared by an OPR analyst and addressed to the manager of the IRS's Legal Analysis Branch, as well as portions of a four-page computer print-out from OPR's case management system summarizing that analysis; and 3) portions of a September 4, 2014 e-mail from the manager of the IRS's Legal Analysis Branch to an OPR attorney.[3]

As a basis for withholding the above information, the IRS cites FOIA Exemption 5. Exemption 5 shields from disclosure all "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). As interpreted by courts, Exemption 5 "allows agencies to withhold information that would in the context of litigation be protected from discovery by a recognized evidentiary or discovery privilege" including, as relevant here, the

---

[2] Because I conclude that the agency's decision to redact the phone numbers and e-mail addresses was proper under Exemption 6, I need not address the IRS's reliance on Exemption 7.

[3] In addition to Exemption 5, the IRS also relied upon Exemption 3, in conjunction with 26 U.S.C. § 6103(a), in declining to produce the September 2013 and December 2013 memoranda, the August 26, 2014 memorandum copy, and the four-page print-out. As discussed below, I conclude that the IRS properly relied upon Exemption 5 to withhold those records. I thus need not address the application of Exemption 3 or Waterman's belated submission of a third-party authorization form. *See* Waterman Decl. ¶ 32.

deliberative process privilege. *Judicial Watch, Inc. v. U.S. Dep't of Def.*, 847 F.3d 735, 738-39 (D.C. Cir. 2017) (internal quotation marks and alteration omitted).

The deliberative process privilege protects from disclosure "government documents that are both 'predecisional' and 'deliberative.'" *Id.* "Documents are 'predecisional' if they are generated before the adoption of an agency policy, and 'deliberative' if they reflect the give-and-take of the consultative process." *Id.* (internal quotation marks and alteration omitted). Examples of predecisional and deliberative records include "advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1995) (internal quotation marks omitted). By shielding such information from FOIA disclosure, the deliberative process privilege "serves to assure that subordinates within an agency will feel free to provide the decisionmaker with their uninhibited opinions and recommendations" by guarding against "premature disclosure of proposed" decisions "before they have been finally formulated or adopted." *Public Citizen, Inc. v. Office of Mgmt. & Budget*, 598 F.3d 865, 874 (D.C. Cir. 2010) (internal quotation marks omitted). Applying those principles, I conclude that the IRS properly relied on Exemption 5.

1. <u>September 2013 and December 2013 Memoranda Referring Waterman to OPR</u>

I first examine the IRS's decision to withhold the September 2013 and December 2013 memoranda. The September 2013 memorandum was authored by the IRS revenue agent responsible for examining the tax liability of Waterman's client, the Authority. The memorandum, which was sent to the agent's direct supervisor, summarized the interactions between Waterman and "IRS personnel over a period of several months" that the revenue

9

agent "believed made the referral" of Waterman to OPR "appropriate." Rawlins Decl. ¶¶ 17(b), 19(b). Along the same lines, the December 2013 memorandum, drafted by the direct supervisor of the revenue agent, "sets forth part of the factual basis"—namely, facts drawn from the supervisor's "telephone conversation" with Waterman in his capacity as the Authority's representative—that the supervisor "believed made the referral" of Waterman to OPR "appropriate." *Id.* ¶¶ 17(a), 19(a). Both memoranda were attached to the report referring Waterman to OPR for further investigation and served as the "basis for the referral for suspected misconduct." *Id.* ¶¶ 17(a), 17(b), 19(a), 19(b); *Vaughn* Index 3.

Waterman does not appear to contest that the September and December 2014 memoranda are predecisional, and for good reason: They were drafted as part of the first step in initiating the OPR review process by individuals without the responsibility for making final OPR decisions. Rawlins Decl. ¶ 19; Ott Decl. ¶¶ 6-7. Waterman instead primarily argues that the deliberative process privilege does not protect the memoranda because those memoranda contain only "factual material"—namely, the employees' "account[s]" of Waterman's conduct. Pl.'s Cross-Mot. 8. Unfortunately for Waterman, he is incorrect. How so?

Although factual information is often outside the bounds of Exemption 5's protections, the line between fact and agency opinion or deliberation "is not infallible and must not be applied mechanically." *Mapother v. Dep't of Justice*, 3 F.3d 1533, 1537 (D.C. Cir. 1993). Rather, when determining whether factual material is privileged from disclosure, courts take a "functional approach" and ask if the "selection or organization of facts is part of an agency's deliberative process." *Ancient Coin Collectors Guild v. U.S.*

10

*Dep't of State*, 641 F.3d 504, 513 (D.C. Cir. 2011); *Hardy v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 243 F. Supp. 3d 155, 164 (D.D.C. 2017). Under that approach to Exemption 5, our Circuit has allowed agencies to withhold factual material that has been selected, summarized, or organized for the purposes of assisting in a deliberative process. *See, e.g., Mapother*, 3 F.3d at 1537-38 (privilege protected factual background information gathered about individual because the "selection of the facts thought to be relevant clearly involves the formula or exercise of policy-oriented judgment") (internal quotation marks and alteration omitted)); *Montrose Chemical Corp. of Cal. v. Train*, 491 F.2d 63, 68 (D.C. Cir. 1974) (employees' "compilation of a summary" of materials from administrative record reflected their "judgment as to what record evidence" would be important to EPA Administrator's decision and was thus "itself a part of the internal deliberative process which should be kept confidential and within the agency"); *Hardy*, 243 F. Supp. 3d at 169-70 (inspectors' interview notes and summaries privileged because inspectors would have had to "extract pertinent material from a larger universe of facts" in order to compile notes and summaries and "thus the documents reflect an exercise of judgment as to what issues seemed most relevant to these inspectors to pre-decisional findings and recommendations" (internal quotation marks, alteration, and citation omitted)).

The principle articulated in those cases controls here. As the IRS declarant explains, the September and December 2014 memoranda organize and summarize "part of the factual basis" that IRS employees "believed made the referral" of Waterman to OPR appropriate. Rawlins Decl. ¶ 19(a)-(b). In other words, the particular facts included in the memorandum were "extract[ed]" from a "larger universe of facts" regarding Waterman's

representation in an "exercise of judgment as to what issues seemed most relevant" to the referring employees' decision to file an OPR Report. *Hardy*, 243 F. Supp. 3d at 170 (internal quotation marks and alteration omitted). Just as disclosing the agencies' compilation of background facts, administrative record portions, or interview notes in prior cases would have revealed the agencies' weighing of factual material and thus their deliberative processes, *see Mapother*, 3 F.3d at 1537-38; *Montrose Chemical*, 491 F.2d at 68; *Hardy*, 243 F. Supp. 3d at 168-70, requiring the IRS to reveal the particular facts its employees thought warranted a referral of misconduct would expose the employees' deliberative evaluation of Waterman's conduct against IRS rules and standards. Because that is the precise result the deliberative process privilege serves to avoid, the factual accounts contained within the September and December 2013 memoranda "fall[] squarely within the category of factual material protected" from disclosure under our Circuit's Exemption 5 precedents. *Ancient Coin Collectors Guild*, 641 F.3d at 513-14.

2. <u>August 26, 2014 Memorandum and Redacted OPR Computer Print-Out</u>

The IRS also withheld a copy of an August 26, 2014 memorandum drafted by an OPR analyst and distributed to a manager of the Legal Analysis Branch. According to the analyst, the purpose of the memorandum was to "record his analysis of the referral, particularly to summarize the facts alleged, identify the violations alleged, and recommend further predecisional agency actions." Rawlins Decl. ¶ 19(c). That memorandum is clearly predecisional, as it contains a preliminary, internal analysis of Waterman's alleged misconduct, including a discussion of whether Waterman's actions warrant subsequent action by the agency. It is also deliberative. To start, for the reasons just discussed in

12

relation to the September and December 2013 memoranda, the agent's selection and evaluation of factual material in the context of a referral investigation is part and parcel of the agency's deliberative process. Moreover, the portions of the memorandum containing the analyst's opinion and "recommendation for how OPR could further investigate the case" are clearly deliberative for purposes of the deliberative process privilege. *Id.* ¶ 17(c); *cf. Hardy*, 243 F. Supp. 3d at 169 (documents that include "'recommendations' or 'opinions' on legal or policy matters'" are "clearly 'deliberative' in nature" (quoting *Vaughn v. Rosen*, 523 F.2d 1136, 1143-44 (D.C. Cir. 1975))). Therefore, the IRS properly withheld the memorandum under Exemption 5. From that conclusion, it follows that the IRS's decision to redact the OPR computer print-out—which merely summarizes the analysis and recommendations contained in the August 2014 memorandum—was also proper under Exemption 5.

3. Redacted September 4, 2014 E-Mail

Finally, the IRS redacted a portion of a September 4, 2014 e-mail between an OPR legal analysis manager and an OPR attorney. According to the IRS's declarant, the redacted portion of the e-mail contains a discussion between the OPR manager and her supervisor regarding "what action OPR should take in response to the referral." Rawlins Decl. ¶ 21. The redacted information therefore recounts a "discussion that took place before any action was taken and describes an action (but not a final agency action) to be taken in the future." *Id.* That kind of conversation involving the planning and evaluation of a "proposed" agency action, prior to adoption of a final agency position, is by its nature

predecisional and deliberative. *Public Citizen, Inc.*, 598 F.3d at 874. The IRS was therefore entitled to withhold it under Exemption 5.[4]

## CONCLUSION

For the foregoing reasons, the Court GRANTS defendant's motion for summary judgment and DENIES plaintiff's cross-motion for summary judgment. An Order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge

---

[4] Contrary to Waterman's contentions, in camera review of the documents at issue is not necessary to sustain the IRS's withholding decisions. The IRS's declarations provide detailed descriptions of the withheld material as well as justifications for the withholdings, including the names and positions of the authors and recipients of the material; confirmation of the purposes of the withheld memoranda; and descriptions of the context in which the withheld information was generated. By providing all of that information, the IRS, in my judgment, has discharged its duty to provide "reasonably specific" justifications for its positions and has demonstrated that "the information withheld logically falls within the claimed exemption[s]." *Am. Civil Liberties Union*, 628 F.3d at 619. In such a case, in camera review "is neither necessary nor appropriate." *Id.* at 626.